A01A0897. NEWTON v. THE STATE.
(552 SE2d 896)

SMITH, Presiding Judge.

John Howard Newton and Steve Heard were indicted by a Clarke County grand jury on one count each of shoplifting.[1] Newton was convicted by a jury, his motion for new trial was denied, and he appeals. Finding no error, we affirm.

1. Newton asserts the general grounds, essentially arguing that Heard committed the crime and that he was merely an innocent bystander. Construed to support the jury's verdict, the evidence shows that two employees of a clothing store in Athens saw Heard enter their store, purchase a sweatshirt, return after 45 minutes to return the sweatshirt, then return to the store yet a third time another 45 minutes later accompanied by Newton. According to the employees, both Heard and Newton were acting in a suspicious manner, "staring at us and keeping conversation but making sure they knew where we were in the store." They went to a rack that had designer pants stacked on top of it and stood "behind the rack so we couldn't see them." Both men were wearing coats: Heard was wearing a Yankees jacket, and Newton "had a longer coat on." One employee testified that both men "got a lot fatter while they were in the store." The other employee observed that Newton "appeared to

have things stuffed in his attire" because he appeared larger and was "favoring his jacket" as if "trying to conceal something." This employee thought that "both of their jackets were full of merchandise." Suspicious, the employees "immediately went to the area [where] they were standing" and found that an entire stack of designer pants was missing. They called the police and described the men.

Based on the employees' description, the police located Heard and Newton walking together on a nearby street. As soon as the officer stopped his patrol car and introduced himself to the men, Newton "started walking off," then "took off running" when the officer told him to stop. The officers apprehended Newton after a short chase when he ran into a fence. One pair of pants was lying on the ground "right beside him," and the officers found two more pairs of pants inside his jacket. The officers brought Heard and Newton back to the store, and one of the employees "identified both men positively" and identified the pants displayed by the police as the merchandise taken from the store.

Newton testified that he simply accompanied Heard to the store at Heard's request. He denied that Heard told him he was planning to steal, denied that Heard asked him to help, and denied stealing anything himself while in the store. He testified that it was not his intention to help Heard steal and denied any knowledge that Heard took the pants. According to Newton, after they left the store Heard told him he had something to show him, pulled four pairs of pants out of his coat, and gave three to Newton to hold, although he later testified that Heard gave him all four. Newton intended to give them back to Heard "right then," but at that moment the officers pulled up. Newton "panicked" and concealed the pants under his jacket. He began to walk away because he did not want to get caught, and when the officer told him to stop, he "just panicked" and "just took off running."

"On appeal this court does not weigh the evidence or determine the credibility of witnesses. [Cit.]" *Jackson v. State*, 213 Ga. App. 420, 421 (444 SE2d 854) (1994). While the evidence was in conflict, it was sufficient to authorize the jury to convict Newton of the crime charged under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Newton also contends the trial court erred in admitting evidence of Heard's prior conviction for shoplifting, claiming it placed his character in evidence because he was also named as a co-defendant in the prior indictment. But the evidence, while incidentally calling Newton's character into question, was admissible to impeach Newton's earlier testimony. Newton testified extensively on direct examination regarding his ignorance of Heard's activities and

intentions, stating that he did not know of Heard's plans, left the store without knowing of Heard's plans, and did not know the pants were stolen until Heard placed them in his hands. On cross-examination, he reiterated that he did not know what Heard was doing in the store for such a long time and that he did not know the pants were stolen even after Heard pulled them out from under his coat but only "assumed" so because he did not see him purchase anything. Asked whether he knew the pants were stolen before he took them into his hands, he responded, "No, sir. I didn't know they were stolen." The State then asked, "Well, you do know that Steve Heard is a shoplifter, don't you? You knew before this day that he was a shoplifter?" Newton responded, "No, sir." The State then sought and received permission from the trial court to introduce evidence of the indictment of Heard, Newton, and another for shoplifting, along with Heard's guilty plea. The State examined Newton regarding the fact that he was arrested for the earlier offense along with Heard, and thus was aware of the shoplifting charges against Heard, and that he knew Heard had pleaded guilty.

"A witness may be impeached by proving that statements made by him in his testimony are not the truth." (Footnote omitted.) *Fortson v. State*, 242 Ga. App. 304, 306 (2) (529 SE2d 429) (2000). Newton argues that the State's questions nevertheless were improper, relying upon *Arnold v. State*, 193 Ga. App. 206, 207-208 (2) (387 SE2d 417) (1989). In *Arnold*, however, the contested issue was not Arnold's character but whether he had shot another person at a nightclub. The evidence in question, a prior conviction for aggravated assault, was wholly irrelevant to any issue in the case. It was admitted only after persistent efforts by the State to inject the issue into the trial by asking Arnold repeatedly on cross-examination if he was a violent person. Id. at 207 (2). We held that "the State cannot rebut or question the presumption of a defendant's good character unless the defendant first *chooses* to place his character in issue." (Emphasis in original.) Id. at 208 (2).

In contrast, testimony that is not intended merely to rebut or question a presumption of good character may be admissible even if it incidentally reflects upon a defendant's character, so long as it is offered to impeach relevant testimony offered by the defendant.

> [I]t would violate rules of evidentiary law and contravene OCGA § 17-7-95 to allow the prosecution to elicit testimony initially from a criminal defendant on cross-examination and then impeach such testimony thereafter with evidence inadmissible in the case-in-chief. Nevertheless where evidence is offered that would tend to directly refute and impeach both defendant's *inherent* assertions on direct

examination and his *express* assertions on cross-examination, such evidence is duly admissible as rebuttal evidence for impeachment purposes as it is inextricably linked to the defendant's direct testimony.

(Citations and punctuation omitted; emphasis in original.) *Chezem v. State*, 199 Ga. App. 869, 871-872 (3) (406 SE2d 522) (1991). Here, as in *Chezem*, Newton's assertions on direct examination were rebutted and impeached by the State's questioning. The repeated theme of Newton's defense was his complete ignorance of Heard's criminal actions and intent and, consequently, his status as innocent bystander rather than participant. Newton's denial that he knew of Heard's criminal history therefore was not a character issue alone, as in *Arnold*, but denial of the necessary knowledge and intent to participate in the crime.

Moreover, unlike the questions directed to Arnold, the State's questions to Newton prior to the introduction of the evidence were not directed at Newton's character. Instead, the State inquired regarding Newton's knowledge of *Heard's* character. The trial court, outside the presence of the jury, gave Newton the opportunity to withdraw his answer before evidence was admitted that would place his character in evidence. While the evidence of Heard's guilty plea necessarily placed Newton's character in evidence because of his arrest and indictment as a co-defendant, the fact that his knowledge was derived from his own arrest and indictment with Heard was incidental to the State's purpose in introducing evidence of Heard's guilty plea. The trial court did not err in permitting the State to impeach Newton's testimony.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED JULY 25, 2001 —
RECONSIDERATION DENIED AUGUST 15, 2001.

*William C. Bushnell*, for appellant.
*Kenneth W. Mauldin, District Attorney, Phillip C. Griffeth, Assistant District Attorney*, for appellee.